IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID RICHARDSON,

                    Plaintiff,                         No. 06:13-cv-00880-HZ

        v.

CAROLYN W. COLVIN,                  OPINION & ORDER
Acting Commissioner of Social Security,

                 Defendant.

Alan Stuart Graf
ALAN GRAF, ATTORNEY AT LAW
208 Pine Street
Floyd, Virginia 24091

       Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - OPINION & ORDER

Lisa Goldoftas
SPECIAL ASSISTANT U.S. ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff David Richardson brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Plaintiff separately moves to remand the case back to the Commissioner based on new evidence. I grant the Motion to Remand pursuant to sentence six of 42 U.S.C. § 405(g). Thus, I do not resolve the issues raised by Plaintiff in the initial appeal of the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on August 18, 2009, alleging an onset date of January 1, 2009. Tr. 158-64. His application was denied initially and on reconsideration. Tr. 92-93, 102-05, 94-95, 107-09.

     On March 22, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 46-91. On May 14, 2012, the ALJ found Plaintiff not disabled. Tr. 23-39. The Appeals Council denied review. Tr. 3-8.

     Plaintiff timely appealed to this Court. After Plaintiff's Opening Memorandum and Defendant's Response Memorandum were filed, Plaintiff filed a separate Motion to Remand based on new evidence. Simultaneously, Plaintiff moved to stay the briefing on the original

2 - OPINION & ORDER

appeal.  I granted the motion to stay the briefing.  The parties then fully briefed the Motion to

Remand.  As noted, I do not resolve the arguments Plaintiff raises in the appeal of the ALJ's

decision.  However, I recite some of the factual background and outline the ALJ's decision in

order to place the issues raised in the Motion to Remand in context.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on neuropathy of the feet and legs, and arthritis.  Tr. 194.

At the time of the hearing, he was forty-three years old.  Tr. 33.  He went through twelfth grade,

but did not actually graduate from high school because he lacked a required English course.  Tr.

59.  He has past relevant work experience as a long haul truck driver, green chain offbearer, and

retail salesperson.  Tr. 33.  Because the parties are familiar with the medical and other evidence

of record, I refer to any additional relevant facts necessary to my decision in the discussion

section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity for the period January through October 2010 which was after his alleged onset date.  Tr. 28. Nonetheless, the ALJ further determined that there had been a continuous twelve-month period

4 - OPINION & ORDER

during which Plaintiff did not engage in substantial gainful activity.  Id.  Next, at step two, the

ALJ determined that Plaintiff has severe impairments of peripheral neuropathy; multi-level

degenerative joint disease of the thoracic spine; obstructive sleep apnea; diabetes; diabetic

neuropathy; history of left foot ulcer; mid-foot osteoarthritis; status post ORIF surgery of the left

ankle in 2009; obesity; and gout.  Tr. 29.  However, at step three, the ALJ found that Plaintiff's

severe impairments did not meet or equal, either singly or in combination, a listed impairment.

Id.

       At step four, the ALJ concluded that Plaintiff has the RFC to (1) lift and carry ten pounds

frequently and twenty pounds occasionally; (2) sit for about six hours during a normal eight-hour

workday with normal breaks; (3) stand/walk for about two hours during a normal eight-hour

workday with normal breaks; (4) perform push/pull activities without limit other than as noted

for lift/carry, and except that the use of Plaintiff's bilateral lower extremities for foot controls is

limited to an occasional basis; and (5) perform all postural activities on an occasional basis.  Tr.

29.  With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past

relevant work.  Tr. 33.

       However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist

in significant numbers in the economy such as pricer, hand packager, and light assembly and

inspector of small products.  Tr. 33-34.  Thus, the ALJ determined that Plaintiff is not disabled,

Tr, 33-34.

DISCUSSION

       In the appeal of the ALJ's decision, Plaintiff contends that the ALJ made the following

errors:  (1) improperly rejected Plaintiff's subjective testimony; (2) improperly rejected the

opinions of Plaintiff's treating physicians; and (3) improperly relied on jobs which are inconsistent with the Dictionary of Occupational Titles or for which an insufficient explanation of the inconsistency was given. Additionally, Plaintiff argues that an error by the Appeals Council in considering medical records of a person other than Plaintiff in concluding that the ALJ committed no error, requires reversal.

With his Motion for Remand, Plaintiff submits records which reveal that in May 2014, he underwent two surgical procedures related to continuing problems with his left foot. Ex. A to Mtn. to Rem. On May 23, 2014, Plaintiff went to the emergency department at PeaceHealth Hospital because of swelling in his left foot. Id. at 1. On May 24, 2014, he underwent a left first, second, and third transmetatarsal amputation. Id. at 14. At that time, the preoperative and postoperative diagnoses were "infection, left lower extremity first MTP, second MTP, third MTP and Charcot foot with evidence of chronic infection." Id.[1]

On May 26, 2014, he was found to have osteomyelitis. Id. at 20. The physician who examined him on that date, Dr. Robert Pelz, M.D., wrote that Plaintiff "has a pretty bad Charcot deformity, now has had a transmetatarsal amputation of 3 of his metatarsals." Id. Dr. Pelz was "somewhat skeptical that this foot would ever be very functional." Id. He also noted that with

---

[1] Charcot foot is defined as a "deformity of the foot; seen in individuals with diabetes mellitus[.]" Taber's Cyclopedic Medical Dictionary 419 (21st ed. 2009); see also id. (defining "Charcot joint" as a "type of diseased joint, marked by hypermobility" where "[b]one decalcification occurs on the joint surfaces, accompanied by bony overgrowth about the margins" and noting that "[d]eformity and instability of the joint are characteristic."); The Merck Manual of Diagnosis and Therapy 869 (19th ed. 2011) (effects of diabetic neuropathy in the lower extremities include "Charcot's" which is defined as the "dislocation or destruction of normal foot architecture").

"MTP" stands for "metatarsophalangeal." Taber's 1500.

6 - OPINION & ORDER

Plaintiff's obesity, a prosthesis could be a problem after a below the knee amputation." Id.

On May 27, 2014, Plaintiff was examined by specialist Dr. Donald Jones, M.D. Id. at 20-21. Dr. Jones noted that Plaintiff was requesting a below-the-knee amputation of his left leg due to constant aching and pain. Id. at 21. As written by Dr. Jones:

> He has a deformed foot. He cannot walk on the left side without pain. He also describes neuropathic pain. He has a dense neuropathy on the left. Examination of the left foot demonstrates he has palpable pulses. However, he has marked swelling of the left forefoot and marked hindfoot valgus. He has a dense neuropathy with decreased sensation on both the dorsal and the plantar aspect of the foot. He has had a debridement of his forefoot in the necrotic edges along the debridement site. . . . X-rays of the left foot are grossly abnormal. The lateral left foot demonstrates obvious collapse of the inferior aspect of the talus. There is a marked deformity of the calcaneus. There is osteoarthritis of the tibiotalar joint. The mid foot demonstrates marked abduction with collapse of the calcaneocuboid joint.

Id.

Dr. Jones also noted that there had been a "significant change in the foot since films were taken on 11/09/2010." Id. At that time, the talus was "well seated on the calcaneus" and there was "no significant tibiotalar arthritic change." Id. In assessing whether the below-the-knee amputation was advisable, Dr. Jones noted that Plaintiff's foot was markedly swollen, he had had multiple infections, and he had a deformed hindfoot. Id. Additionally, Plaintiff had significant change in the subtalar joint and the tibiotalar joint, along with pain with weightbearing. Id. Dr. Jones concluded that "tak[ing] everything into consideration, I would lean in the direction of a BK amputation." Id. at 22.

Plaintiff had the below-the-knee amputation of his left leg on May 29, 2014. Id. at 29-30. The postoperative diagnosis was listed as left foot osteomyelitis with chronic infection, inflammation, and Charcot foot with chronic pain. Id. at 29. Plaintiff was discharged from the

hospital on June 6, 2014.  Id. at 37.  Plaintiff's discharge summary noted that he had a "complex

Charcot deformity of the left foot[.]"  Id. at 38.  Finally, the radiology report of the left foot,

dated May 23, 2014, notes the presence of a "markedly abnormal appearance of the hindfoot and

midfoot" with an apparent collapse of the talus and calcaneus.  Id. at 40.  Diffuse soft tissue

swelling was present and abnormal sclerosis of the hindfoot and midfoot was seen.  Id.  The

radiologist noted that the findings "may be related to a Charcot joint."  Id.

 Plaintiff argues that the new medical records warrant a remand for further proceedings

because the surgeries performed in May 2014 are the result of conditions Plaintiff complained

about to the ALJ in 2012.  Plaintiff argues that the new evidence is relevant to the time period at

issue before the ALJ because it shows that Plaintiff's condition was much more serious than the

ALJ assessed at that time and that it continued to worsen.  As a result, the new evidence could

change the outcome of the ALJ's decision.

 Defendant argues that the new evidence does not justify a remand because it pertains to a

later time after Plaintiff's condition worsened.  Defendant argus that the evidence in the new

medical records regarding Charcot's foot is equivocal.  Defendant acknowledges that some

evidence refers to the presence of Charcot's foot, but Defendant then cites to the radiology report

which stated that the findings "may be" related to a Charcot joint.  Defendant contends that

current evidence of possible Charcot foot does not alter the ALJ's findings from May 2012 that

Charcot foot was ruled out.

 Defendant further argues that a later diagnosis of Charcot's foot does not undermine the

ALJ's analysis because the ALJ did not limit his reasons for rejecting medical evidence based

only on the Charcot foot diagnosis.  Additionally, Defendant notes that Plaintiff himself admits

that his conditions have worsened.  Defendant argues that a worsening condition strengthens

Defendant's argument that the ALJ's May 2012 was supported by substantial evidence because

absent a worsening condition, the evidence of the condition at the time of the ALJ's decision was

that Plaintiff was not disabled.

Remand of an ALJ decision in a social security case occurs under either sentence four or

sentence six of 42 U.S.C. § 405(g).  Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991) (noting

that the explicit delineation in section 405(g) of the circumstances under which remands are

authorized limits the district court's authority to these types; further describing remands under

sentence four and sentence six).  Under sentence four, the district court has "the power to enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing[.]"  42 U.S.C. § 405(g).  "A sentence four remand has thus been characterized as

essentially a determination that the agency erred in some respect in reaching a decision to deny

benefits."  Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002).  Additionally, a sentence four

remand "becomes a final judgment, for purposes of attorneys' fees claims brought pursuant to the

[Equal Access to Justice Act], 28 U.S.C. § 2412(d), upon expiration of the time for appeal."  Id.

In contrast, sentence six remands are made absent a determination of whether the ALJ

erred, and in only two situations:  "where the Commissioner requests a remand before answering

the complaint, or where new, material evidence is adduced that was for good cause not presented

before the agency."  Id.  Sentence six remands "do not constitute final judgments."  Id. at 855.

Instead, the "'filing period [for attorney's fees] does not begin until after the postremand

proceedings are completed, the Commissioner returns to court, the court enters a final judgment,

and the appeal period runs." Id. (quoting Melkonyan, 501 U.S. at 102).

Plaintiff argues that a sentence four remand is appropriate; Defendant contends that no remand is appropriate. I reject both arguments because given the new evidence, a sentence six remand is the proper resolution of the Motion to Remand.

Defendant does not dispute that just cause exists for the submission of the new evidence during the pendency of the case here. The issue is whether the evidence is material. Evidence is material if there is a "reasonable probability that the new evidence would have changed the outcome of the Secretary's determination had it been before him." Booz v. Sec'y, 734 F.2d 1378, 1380 (9th Cir. 1984) (internal quotation marks omitted); see also Mayes v. Masanari, 276 F.3d 453, 462 (9th Cir. 2001) (noting that Booz governs the materiality inquiry in assessing whether to remand for new evidence).

Defendant's argument is premised on its reading of the new medical records. Defendant cites to certain portions of the new records to contend that the May 2014 Charcot foot diagnosis was not definitive and thus, cannot be material because it cannot alter the ALJ's decision. But, interpreting the evidence is not the role of the district court. The ALJ is charged with reviewing the record and making factual findings. See, e.g., Olds v. Comm'r, No. 03:13-cv-00849-HZ, 2014 WL 3670175, at *7 (D. Or. July 22, 2014) (where evidence is amenable to more than one interpretation, it is the ALJ's responsibility to weigh the evidence and resolve the ambiguity) (citing Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2005)). Here, while the May 2014 records can perhaps be interpreted as urged by Defendant, they can also support a finding that Charcot's foot was a definitive diagnosis. It is not for this Court to make factual findings about the newly submitted evidence.

10 - OPINION & ORDER

Defendant alternatively urges that even if the Charcot's foot diagnosis in May 2014 is definitive, it does not undermine the ALJ's 2012 conclusion that Charcot's foot was not a proper diagnosis at the time of the podiatrist's August 2010 opinion.  The evidence, according to Defendant, is that the May 2014 surgeries are a result of a worsening condition which inferentially establishes that the condition in May 2012 was not disabling.

One reason given by the ALJ in support of his rejection of a treating podiatrist's August 2010 RFC assessment was that the podiatrist relied on a diagnosis of Charcot's joint which the ALJ found was "later determined not to be a diagnosis."  Tr. 31.  The podiatrist, Dr. Kash Siepert, D.P.M., noted that x-rays showed significant edema to the dorsal foot with minimal bone changes that could suggest Charcot changes to the mid-foot.  Tr. 311.  In completing his August 3,  2010 RFC questionnaire, he listed Charcot joint as one of three diagnoses.  Tr. 308.  His chart note from that same date listed Plaintiff's problems as Charcot joint, diabetic polyneuropathy, diabetes, and edema.  Tr. 306.

The record cited by the ALJ in support of his position that the Charcot joint was later determined not to be a diagnosis is not entirely clear.  The ALJ cited to page sixteen of Exhibit 10F, Tr. 31, but the exhibit, which contains the records of treating orthopedic specialist Dr. Daniel Fitzpatrick, M.D., from November 2010 to January 2011, has only eight pages.  Tr. 399-406.  My review of the entire exhibit shows that a review of x-rays by Dr. Fitzpatrick revealed a "significant area of soft tissue swelling over the dorsal aspect of the left foot," with "moderate midfoot arthrosis but no clear evidence of Charcot changes."  Tr. 406.  Nonetheless, Dr Fitzpatrick still listed Charcot arthropathy as a possible diagnosis.  Id.  Later, the doctor noted that Plaintiff represented that Charcot's foot had been ruled out.  Tr. 399, 404.  The doctor also

11 - OPINION & ORDER

remarked that an MRI showed only reactive edema with osteoarthritis in the mid foot.  Tr. 399.

I do not determine whether the ALJ properly relied on Exhibit 10F for his conclusion that Charcot's joint was dismissed as a diagnosis.  And I do not determine that any such dismissal was or was not a sufficient basis upon which to reject the treating podiatrist's August 2010 opinion.  I recite to these portions of the record to show that in 2010, the podiatrist believed x-rays showed a possible Charcot joint and listed it as one of several diagnoses for Plaintiff.  In 2011, the orthopedist indicated, partly based on Plaintiff's representation and also on the MRI, that the mid foot problems were arthritic in nature and without clear evidence of a Charcot joint.  Then, in 2014, Plaintiff had his leg amputated below the knee and Charcot foot was arguably present.  With this evidence and progression, it is unclear when, or if, Plaintiff's mid-foot problems became disabling, or contributed to a finding of disability.  Fundamentally, because the new evidence relates to conditions present before and at the time the ALJ issued his decision[2] and because the nature of the left foot problems appears to be progressive, it is reasonably probable that the new evidence could establish that Plaintiff was actually disabled before or at the time the ALJ considered the matter.  However, making the disability determination involves construing records and making factual findings.  Accordingly, it is for the ALJ to consider the new records

---

[2]  There is no dispute that the below-the-knee amputation of Plaintiff's left leg in May 2014 is related to medical conditions which existed at the time the ALJ rendered his decision in May 2012.  See, e.g., Tr. 29 (ALJ found severe impairments of peripheral neuropathy, diabetes, diabetic neuropathy, history of left foot ulcer, mid-foot osteoarthritis, and past ORIF surgery of the left ankle); Ex. A to Mtn. to Rem. at 9 (noting abnormal foot consistent with cellulitis and concern for abscess, uncontrolled diabetes); Id. at 10 (noting diagnosis of peripheral neuropathy, reference to chronic foot wound with previous surgery to the site); Id. at 11 (referring to culture of left foot ulceration); Id. at 16 (chief complaint listed as left foot diabetic foot infection, and to commencement of foot problems four years prior when Plaintiff suffered an ankle fracture requiring surgery); Id. a 17 (noting deformed ankle and mid foot collapse); Id. at 21 (referring to dense neuropathy of the left foot/leg).

in light of the preexisting records and make the required factual findings. As such, a remand

pursuant to sentence six is appropriate in this case. See Church v. Comm'r, No. 06:12-cv-01250-

MC, 2014 WL 562883, at * 4 (D. Or. Feb. 5, 2014) (remanding case to Commissioner pursuant

to sentence six because "an ALJ is in a far better position than this court to determine the impact

and credibility of these [newly submitted] records" and explaining that the Commissioner "is in a

much better position" than the court to perform the task of assessing the new evidence and

"prudent discretion" dictated a sentence six remand for further proceedings).

CONCLUSION

Plaintiff's motion to remand [26] is granted. This case is remanded to the Commissioner

for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g). This Court

will retain jurisdiction and refrain from entering a final judgment until the Commissioner returns

with a new decision reflecting the inclusion and consideration of the new records.

IT IS SO ORDERED.

Dated this ___19th___ day of ___Sept.___, 2014

_Marco Hernandez_
Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER